The suit was brought by G. B. Holder and wife against Mrs. W. A. Clark, J. C. Yarberry, Citizens' State Bank of Bullard, and Ed. Hall, as commissioner of insurance and banking of Texas. The petition sought to recover a judgment against the Citizens State Bank of Bullard, as maker, and Mrs. W. A. Clark, as indorser, of three certificates of deposit issued by the bank to Mrs. W. A. Clark, and to fix and foreclose a vendor's lien on a certain lot in Flint, in Smith county, as against Mrs. W. A. Clark and J. C. Yarberry. It is unnecessary to state the pleadings as to the commissioner. The defendants Clark and Yarberry pleaded the want of consideration for the indorsement of the certificates; that the certificates were given in fact as a cash payment for the land, and that the indorsement was merely for the purpose of passing title to them; that the defendant Mrs. Clark was released as indorser of the certificates because the plaintiffs voluntarily held and refrained from presenting them for payment in order to collect more interest, and because the plaintiffs negligently failed to present and demand payment of the certificates within a reasonable time after delivery, and before the closing of the doors of the bank on September 6, 1921. After hearing the evidence the court peremptorily instructed the jury as follows:
"Under the undisputed facts in this case, it becomes a legal question what the verdict shall be. I therefore instruct you to return the following verdict, which one of your number will sign as foreman: `We, the jury, find for the plaintiffs, G. B. Holder et ux., against the defendants, Mrs. W. A. Clark and the Citizens' State Bank of Bullard, the sum of $1,000 with 4 per cent. interest thereon from the 1st day of April, 1921, to this date, June 21, 1922, and the further sum of $500 with 4 per cent. interest thereon from May 2, 1921, to this date, and the further sum of $500 with 4 per cent. interest thereon from May 16, 1921, to this date, and a foreclosure of the vendor's lien on the property described in plaintiffs' petition as against the defendant Mrs. W. A. Clark and J. C. Yarberry. We further find in favor of the other defendant, viz. Ed. Hall, commissioner of insurance and banking.'"
It was proven that on August 8, 1921, G. B. Holder and wife executed and delivered a deed to Mrs. W. A. Clark and J. C. Yarberry reciting a consideration of $2,000, and conveying a certain described lot, with a residence on it, situated in Flint, Tex. The agreed consideration for the lot was, in fact, as admitted, the three following certificates of deposit, less the accumulated interest to date of the deed, issued by the Citizens' State Bank of Bullard, Tex., viz.:
"The Citizens' State Bank, Bullard, Texas.
"Bullard, Texas, April 1, 1921.
"This certifies that Mrs. W. A. Clark has deposited with this bank one thousand and no/100 — $1,000.00, payable to the order of herself in *Page 700 
current funds in six months from date, on return of this certificate properly indorsed. Interest at four per cent. per annum if left six months. W. W. Hines, Cashier."
"The Citizens' State Bank, Bullard, Texas.
"Bullard, Texas, May 2, 1921.
"This certifies that Mrs. W. A. Clark has deposited with this bank five hundred and no/100 — $500.00, payable to the order of herself in current funds in six months from date upon return of this certificate properly indorsed, with interest at the rate of four per cent. per annum from date if left six months.
"W. W. Hines, Cashier."
"The Citizens' State Bank, Bullard, Texas.
"Bullard, Texas, May 16, 1921.
"This certifies that Mrs. W. A. Clark has deposited with this bank five hundred and no/100 dollars — $500.00, payable to the order of herself in current funds in six months from date on the return of this certificate properly indorsed, 4% if left 6 months.
"W. W. Hines, Cashier."
The appellees did not and were not to receive any other consideration for the lot then the three certificates less the accumulated interest to date of the deed. The accumulated interest to date of deed was $22.40, and G. B. Holder gave to Mrs. W. A. Clark his personal check on the Citizens' National Bank of Tyler for said sum of $22.40, and this check was duly paid by the said bank. Mrs. W. A. Clark indorsed in blank each of the three certificates, and delivered them to the appellees at the time that she delivered the deed and received the check for the accumulated interest. After the delivery of the certificates G. B. Holder, as he says, went to the Citizens' State Bank to tell the officers of the bank that "he was the owner of the certificates." and "to see if the certificates were payable at that time." G. B. Holder further testified:
"I did not have the cashier or any person in the bank to make any entry showing my ownership of those certificates against the bank, nor did I make any demand on the bank to pay the money on them at that time: I just asked them if they could be cashed, and that is all. * * * I never made any demand or request at the bank to pay me the money on the certificates before the bank went into the hands of the State Commissioner of Insurance and Banking, and its doors were closed for business. I only asked if they would be paid. I did not make any demand. He (the cashier) told me that they would be payable in six months; he did not tell me that they would be paid at any time, but he told me that, in order to get interest on them, they would have to be left for six months; he said that he could not pay them until they were due. I understood that I could not have drawn on them after the cashier told me so. * * * I voluntarily left in the bank the funds represented by the certificates. I did not make any contract or agreement with the bank through any officer to pay me interest on the certificates. I had no contract with the bank except such as the certificates by the law would carry."
The state commissioner of insurance and banking took possession of the assets of the Citizens' State Bank of Bullard on September 6, 1921, by reason of its insolvency, for the purpose of liquidation, as provided by the banking laws of Texas. No portion of the principal or interest of the three certificates has ever been paid by the maker or the indorser to the appellees, and the certificates were due and unpaid at the time of suit and at the time of the trial. The collectable assets of the bank are entirely insufficient to pay its liabilities. None of the parties to this conveyance and sale appear to have known of the insolvency of the bank until its doors were closed. After the bank had closed its doors and was in the hands of the state commissioner for liquidation, the appellees, on December 19, 1921, and acting on a letter received from appellant Clark's clerk and Yarberry, made and presented to the state commissioner a claim in proper form for the amount of the certificates with interest. In the claim appears the following:
"This claim is made and presented to the Commissioner of Insurance and Banking in compliance with the laws of Texas and with the express understanding that claimants in making and presenting said claim do not intend to and do not release the said Mrs. W. A. Clark as the indorser of said certificates, and said claim is in keeping with a request made upon them by the said Mrs. Clark, a copy of which request is also hereto attached and made a part hereof."
This claim was not classified as a common or general creditor's claim against the bank, on the ground that it was an interest-bearing deposit; and appellees promptly gave notice to Mrs. Clark, the indorser, of the nonpayment and nonclassification of the certificate indebtedness. Demand for payment was made upon both the bank and the commissioner, and notice of nonpayment was duly given the indorser, Mrs. Clark. The assistant cashier of the bank testified in behalf of the defendants as follows:
"During the time I was with the bank neither one of the certificates signed by W. W. Hines as cashier, and certifying that Mrs. W. A. Clark had deposited with the said bank certain sums of money payable to the order of herself in current funds in six months from date on return of certificates properly indorsed, and promising to pay interest at 4 per cent. per annum if left six months, was presented to me. The certificates, I understand, were assigned or transferred to G. B. Holder on August 8, 1921. Neither one of the said certificates was presented to me at the bank for payment by G. B. Holder or any one else during the time I was with the bank to the date it was closed. During said time the said bank had the funds on hand with which to have paid the certificates if they had been presented *Page 701 
during the month of August or September, 1921, before the bank closed; that is to say, during all of that time said bank had sufficient funds, according to the books of the bank, to take care of such deposits, and during most of the time had the actual cash on hand. If the certificates, or any of them, had been presented to the bank for payment at any time in banking hours during said time, they would have been paid; that is, I would have paid them during any of such time, if presented, unless directed otherwise by the cashier."
The above are substantially the facts of the case. There is no question raised as to the right to have a lien established and foreclosed on the land if the appellees are entitled to a personal judgment against Mrs. Clark as indorser of the certificates.
The plaintiffs in the suit sought a recovery against Mrs. W. A. Clark on her indorsement of the certificates in suit, and Mrs. W. A. Clark does not deny that she did indorse the certificates at the time she delivered them to the plaintiffs. A certificate of deposit as such, like the instruments in evidence, is, as generally held, a negotiable instrument (2 Daniel on Neg. Instr. [5th Ed.] § 1702; 3 R C. L. p. 574, § 203; 4 Elliott on Contracts, § 3360; Hatch v. First National Bank of Dexter, 94 Me. 348, 47 A. 908, 80 Am.St.Rep. 401; Kirkwood v. First National Bank of Hastings, 40 Neb. 484, 58 N.W. 1016, 24 L.R.A. 444,42 Am.St.Rep. 683; Easley v. National Bank, 138 Tenn. 369, 198 S.W. 66, L.R.A. 1918C, 689), and a certificate of deposit, being negotiable in form, is transferable by indorsement in the same manner and with the same legal result as other negotiable paper.
A liability assumed by an indorser, and which he contracts, is that the negotiable instrument will be paid according to its purport upon due presentment or demand. 1 Daniel on Neg. Instr. §§ 669a, 671; 3 R.C.L. p. 1148, § 363. Therefore this is sufficient to determine the case and authorize the judgment for the plaintiffs, unless the evidence raised essential issues pleaded as a defense. And it is believed that a controverted issue was not presented by the evidence on the grounds relied upon as a defense. The evidence is conclusive that it was not within the contemplation of the parties that the certificates should be taken as a cash payment for the house and lot. The agreement, as shown by the record, was that appellee Holder was to receive the certificates, less the accumulated interest to date of deed, as consideration for the house and lot. The certificates of deposit were payable on demand at the option of the owner, but no interest was payable unless the deposits were left in the bank for six months. At the time of the transfer of the certificates by Mrs. Clark to Holder, the deposits had not been on deposit for the required six months, and there was not, in virtue of the terms of the certificates, any interest legally due thereon. Clearly, then, it was within the contemplation of Mrs. Clark and Holder that the deposits should remain in the bank for the six months in order to get the interest thereon. She was to be paid the accumulated interest to the date of transfer, and received it under the agreement, as a valuable consideration therefor. If holding the certificates for six months was necessary, as it was, to entitle the holder to receive any interest as between Mrs. Clark and the bank, Mrs. Clark could not legally require Holder to present the certificates for payment by the bank earlier than the agreed six months. The agreement evidences a transfer of the certificates of deposit as such by Mrs. Clark as the consideration for the land. In this agreement Holder did not have to present the certificates for payment until the maturity of same at the end of six months. And there is no pretense in the evidence that appellee Holder had any knowledge or information as to the insolvency of the bank at any time before the day its doors were closed by the commissioner of insurance and banking.
The certificates show upon their face that they are time certificates of deposit, upon which interest had been contracted to be paid by the bank, and Mrs. Clark, as indorser, had no legal right to demand that appellee Holder should attempt to prove them as a claim payable out of the depositors' guaranty fund. The failure of appellees to meet this request would not legally absolve the indorser from any liability on her indorsement.
Appellants predicate error upon the ruling of the court in sustaining objection to certain evidence. The assignments of error in this respect should be, we conclude, overruled, as presenting no reversible error.
The court did not err, we conclude, in giving the peremptory instruction, and the judgment is affirmed. *Page 702